IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs at Knoxville November 17, 2015

**ANDRA TAYLOR v. STATE OF TENNESSEE**

**Appeal from the Circuit Court for Madison County**
**No. C-14-262   Donald H. Allen, Judge**

———————————————

**No. W2015-00744-CCA-R3-PC  -  Filed February 3, 2016**

———————————————

The Petitioner, Andra Taylor, appeals the Madison County Circuit Court's denial of his petition for post-conviction relief from his 2012 convictions for aggravated burglary, employing a firearm during the commission of a dangerous felony, and two counts of reckless endangerment involving a deadly weapon, for which he is serving an effective fourteen-year sentence. The Petitioner contends that the post-conviction court erred by denying him relief due to the ineffective assistance of counsel in the conviction proceedings. We affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ROGER A. PAGE, JJ., joined.

George Morton Googe, District Public Defender; and Gregory D. Gookin, Assistant District Public Defender, for the appellant, Andra Taylor.

Herbert H. Slatery III, Attorney General and Reporter; Leslie E. Price, Senior Counsel; James G. (Jerry) Woodall, District Attorney General; Brian M. Gilliam, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The Petitioner's convictions relate to events at an apartment at which the Petitioner had used drugs earlier in the evening. The State's evidence showed that after having been at the apartment, the Petitioner returned with a handgun, which he fired at Freddy Jones. Mr. Jones was struck in the stomach. The Petitioner said the shot had been a "warning shot," demanded money, and said the next shot would be "for real." *State v. Andra L. Taylor*, No. W2012-01660-CCA-R3-CD, 2013 WL 5777253, at *1-2 (Tenn. Crim. App. Oct. 25, 2013).

Although the Petitioner did not testify at his trial, his pretrial statement was admitted as evidence. In it, he stated he went to the apartment with Willie Smith to retrieve some stereo equipment that Mr. Smith had stolen previously from the Petitioner. The Petitioner said that he had taken a gun but that he left it outside while visiting inside the apartment. The Petitioner stated that he later went outside to get the gun, that he returned to the apartment, and that he went to a bedroom where three individuals were using methamphetamine. He stated that as he walked into the bedroom, he raised his arm and that the gun fired without his pulling the trigger. The Petitioner denied taking money that one of the people in the bedroom had thrown onto the bed but acknowledged taking methamphetamine from the apartment. *Id.* at *2.

The Petitioner was convicted following a jury trial, and after his unsuccessful appeal, he filed the present post-conviction action alleging he received the ineffective assistance of counsel in numerous respects. This appeal relates to three of these allegations: (1) trial counsel's failure to file a motion to suppress the Petitioner's pretrial statement, (2) counsel's failure to move for the trial judge to recuse himself based upon the judge's prior acquaintance with the victim, and (3) counsel's having "essentially coerced" the Petitioner not to testify. Our recitation of the evidence presented at the post-conviction hearing is limited to those facts relevant to these allegations.

The Petitioner testified that trial counsel did not file a motion to suppress the Petitioner's unsigned pretrial statement. The Petitioner agreed the statement was read into evidence. He said the police officer who interviewed him and took his statement used "bits and pieces" of the interview in the written statement. The Petitioner said that he discussed a motion to suppress with counsel but that counsel advised him no basis existed in Tennessee law for suppression based upon the lack of the Petitioner's signature on the statement. The Petitioner said counsel told him that in challenging whether the statement accurately reflected what the Petitioner said to the officer, it would be a matter of the officer's word against the Petitioner's.

The Petitioner testified that the recusal issue arose when the trial judge commented that he and the victim had attended school together. The Petitioner said that at the time, he did not ask trial counsel about having a different judge for the case. The Petitioner said that his uncle "got in [counsel's] face about a couple of things" and that his uncle told him about the issue later. The Petitioner thought his uncle "was saying things," but he realized the issue later when he had the opportunity to research the issue in a law library. The Petitioner said counsel never asked the judge to recuse himself.

The Petitioner testified that at the conclusion of the State's proof, he and trial counsel discussed whether the Petitioner would testify. The Petitioner said that initially, counsel wanted him to testify but that the Petitioner did not want to testify. He said counsel wanted him to tell his side of the story. The Petitioner said that after they had seen the State's proof, he changed his mind and communicated his desire to testify to counsel but that "[Counsel] was saying it probably wasn't no good time to say nothing anyway." The Petitioner said he made his desire to testify clear to counsel. The Petitioner acknowledged he had signed a waiver of his right to testify in front of the trial court. He recalled the court's having advised him of his right to testify and of the fact that it was his choice and not his attorney's whether he testified. The Petitioner thought he had been advised that if he testified and was convicted, his sentence would be determined by the jury, not the court.

The Petitioner testified that if he had taken the stand at his trial, he could have explained the facts relative to the aggravated burglary charge. He said he did not forcibly enter the apartment. He said he went to the apartment with Mr. Smith twice and thought it was a "friendly house." He said that during his first visit, the victim told him the apartment was the victim's and that the Petitioner knocked and was admitted during the second visit. The Petitioner said he knew a burglary conviction was a predicate to a conviction for the possession of a firearm during the commission of a dangerous felony. He said that when he tried to get counsel "to say something about the burglary," counsel did not.

The Petitioner explained that had he testified at his trial, he would have said the gun Mr. Smith gave him was a "piece of crap and just went off." The Petitioner said he did not try to shoot the victim. He noted that witnesses testified about his remorse and said he thought the jury believed he had not intended to shoot the victim because it convicted him of lesser included offenses.

Relative to the aggravated robbery charge of which he was acquitted, the Petitioner testified that he did not take anything from the apartment during the incident. He noted the conflicting trial testimony about whether he took anything.

The Petitioner testified that although he lived in Illinois before the trial, he was able to see trial counsel "quite regularly." He said that he was unable to meet with counsel a couple of times when counsel requested but that they talked by telephone. When the Petitioner was questioned about his desire for counsel to have obtained a favorable plea offer from the State, the Petitioner said that counsel "really is a good attorney."

Trial counsel testified that to the best of his recollection, the Petitioner had signed a waiver of his *Miranda* rights but had refused to sign the written summary of the oral statement the Petitioner gave the police. Counsel said the Petitioner had the inaccurate impression that an unsigned pretrial statement could not be used as evidence. Counsel said he advised the Petitioner that if a person waived his rights and made oral statements or gave an unsigned written statement, the statement could be used against the person. Counsel said that if any issue had existed regarding the admissibility of the unsigned statement, he would have filed a motion to suppress. He said his practice was to obtain a copy of the signed waiver of rights and to ask the client if the client signed it. Counsel said that his practice was to question the client about the circumstances surrounding the client's signing a waiver of rights. Counsel said his practice also was to ask the client whether the statement accurately reflected what the client said. Counsel said that if a discrepancy existed, his practice was to file a motion to suppress. Counsel said he and the Petitioner discussed the lack of a signature as bearing on the weight to be given to the statement. Counsel said he cross-examined the officer who obtained the statement about whether the officer had answered the Petitioner's questions about whether the statement would be used against the Petitioner and that the officer testified he "just didn't answer that question anymore." Counsel said that in hindsight, he wished he had filed a motion to suppress in order to satisfy the Petitioner's desire to have a hearing, even though counsel did not think such a motion would have had merit.

Relative to the recusal issue, trial counsel testified that during a jury-out hearing, Mr. Jones said something to the trial judge and that the judge responded by stating he thought he knew Mr. Jones from school. Counsel testified that he knew Mr. Jones, as well, and that Mr. Jones was a long-time Jackson resident. Counsel said he did not request a recusal and did not think any prejudice to the Petitioner existed. Counsel said that if the judge had made comments in front of the jury that could have influenced the outcome of the trial, counsel would have requested that the judge recuse himself.

Trial counsel testified that he advised the Petitioner to keep an open mind about whether the Petitioner should testify at the trial. Counsel said that initially, the Petitioner did not want to testify. Counsel said that as the trial progressed, they discussed whether the Petitioner would testify. Counsel said that the Petitioner decided not to testify and that counsel did not force or coerce the Petitioner into making this decision. Counsel said the trial judge gave them a few minutes for a final discussion before the Petitioner signed the waiver of his right to testify. Counsel said he did not tell the Petitioner that the judge or the jury would treat the Petitioner differently if the Petitioner testified.

Trial counsel testified that although the Petitioner lived in Illinois while the charges were pending, counsel and the Petitioner met several times and talked by

-4-

telephone. Counsel said that he and the Petitioner discussed the burglary charge several times, that the State's allegation was that the Petitioner reentered the apartment without permission after having visited twice with permission, and that counsel advised the Petitioner that "aggravated burglary didn't necessarily involve breaking in or kicking the door in." Counsel said that the Petitioner was always courteous and polite and that the Petitioner asked questions. Counsel said the Petitioner stated repeatedly, "I know you will do your job."

Relative to the recusal issue, the post-conviction judge, who had also served as the trial judge, stated that he and Mr. Jones attended elementary school together in the 1960s but were not the same age. The judge did not think the Petitioner was prejudiced by the judge's prior acquaintance with Mr. Jones. The judge thought that he might have prosecuted Mr. Jones in the late 1980s or early 1990s when the judge was an assistant district attorney general.

After the hearing, the post-conviction court denied relief. This appeal followed.

Post-conviction relief is available "when the conviction or sentence is void or voidable because of the abridgement of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103 (2012). A petitioner has the burden of proving his factual allegations by clear and convincing evidence. *Id.* § 40-30-110(f) (2012). A post-conviction court's findings of fact are binding on appeal, and this court must defer to them "unless the evidence in the record preponderates against those findings." *Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997); *see Fields v. State*, 40 S.W.3d 450, 456-57 (Tenn. 2001). A post-conviction court's application of law to its factual findings is subject to a de novo standard of review without a presumption of correctness. *Fields*, 40 S.W.3d at 457-58.

To establish a post-conviction claim of the ineffective assistance of counsel in violation of the Sixth Amendment, a petitioner has the burden of proving that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see Lockhart v. Fretwell*, 506 U.S. 364, 368-72 (1993). The Tennessee Supreme Court has applied the *Strickland* standard to an accused's right to counsel under article I, section 9 of the Tennessee Constitution. *See State v. Melson*, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

A petitioner must satisfy both prongs of the *Strickland* test in order to prevail in an ineffective assistance of counsel claim. *Henley*, 960 S.W.2d at 580. "[F]ailure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim." *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). To establish the

performance prong, a petitioner must show that "the advice given, or the services rendered . . . , are [not] within the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975); *see Strickland*, 466 U.S. at 690. The post-conviction court must determine if these acts or omissions, viewed in light of all of the circumstances, fell "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. A petitioner "is not entitled to the benefit of hindsight, may not second-guess a reasonably based trial strategy by his counsel, and cannot criticize a sound, but unsuccessful, tactical decision." *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994); *see Pylant v. State*, 263 S.W.3d 854, 874 (Tenn. 2008). This deference, however, only applies "if the choices are informed . . . based upon adequate preparation." *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992). To establish the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

# I

The Petitioner contends that trial counsel provided ineffective assistance by failing to file a motion to suppress the Petitioner's pretrial statement. The State counters that the Petitioner failed to establish his ineffective assistance of counsel claim because he did not show a basis for suppressing the evidence. We agree with the State.

Relative to this allegation, the post-conviction court found:

[T]he [Petitioner] claims that his "oral" statement to the Investigator was not signed by him, but he does not deny that he made the statement to the law enforcement officer. He claims his attorney was ineffective by not challenging this "oral" statement to police. Investigator Aubrey Richardson testified at trial that he advised the [Petitioner] of his constitutional (Miranda) rights before beginning the interview, that the defendant voluntarily and knowingly signed the written waiver form indicating his willingness to give a statement to the officer. Investigator Richardson further testified that the [Petitioner] was agreeable and willing to speak and give a statement to him, but did not want to sign or give a "written" statement.

The Court finds that the claim of ineffective assistance of trial counsel for not challenging this "oral statement" to police is without merit. The petitioner does not deny that he gave this statement about what

happened to the officer, he does not deny that he went to this apartment twice looking for property, he does not deny that he carried a gun into the apartment, he does not deny that he pulled out his gun and fired a shot inside the apartment which struck one of the occupants being Freddy Jones, a person that he knew. The fact that the [Petitioner] didn't "sign" this "oral" statement to police does not mean that his statement should be suppressed. The claim is without merit.

The record reflects that trial counsel and the Petitioner discussed the circumstances surrounding the Petitioner's signing the *Miranda* waiver and giving the oral statement. Counsel testified that although the Petitioner thought the lack of a signature was significant, counsel said that he was unaware of a legal basis upon which to seek suppression and that if any basis had existed, he would have filed a motion to suppress. The Petitioner acknowledged signing the document memorializing his waiver of his *Miranda* rights, and although he said the police officer who created the written summary of the Petitioner's oral statement used "bits and pieces," the Petitioner did not deny the contents of the statement itself. At the hearing, the Petitioner did not advance a legal basis for suppression of the statement, and he has not articulated one in his appellate brief. The Petitioner failed to show deficient performance and any prejudice from the alleged deficiency, and he is not entitled to relief on this basis.

## II

The Petitioner contends that he received the ineffective assistance of counsel due to trial counsel's failure to move for a recusal based upon the judge's prior acquaintance with a State's witness. The State contends that the record supports the post-conviction court's determination. We agree with the State.

Relative to this issue, the post-conviction court found:

[T]he petitioner claims that . . . trial counsel was ineffective by "failing to challenge the recusal of the Judge." Defendant admits under oath that he was "not innocent" of all of the charges for which he was convicted and that he had in fact possessed a gun which "just went off" when he pulled it out. He admits that he shot Freddy Jones inside the apartment and was sorry that he shot him. He claims he didn't "force entry" into the apartment and didn't take any property. He testified that he was interested in a guilty plea deal, but didn't want to plead guilty to all charges. He admitted that he signed his Miranda rights waiver, that he met with his retained attorney [quite] regularly, and that [trial counsel] is a "really good attorney."

[Trial counsel] testified that he didn't ask for a recusal of the trial judge under the circumstances . . . . The Court credits [counsel's] testimony that there was no basis . . . to file a motion for recusal of the trial judge.

The record reflects that the trial judge and the victim, who were not the same age, went to elementary school together. The judge thought he might have prosecuted the victim many years earlier when the judge was an assistant district attorney general. Trial counsel saw no reason to request a recusal based upon the judge and the victim's prior acquaintance. The Petitioner offered no evidence at the post-conviction hearing that the prior acquaintance created any bias in favor of the victim or prejudice against the Petitioner that would have had any effect on the judge's ability to conduct the Petitioner's trial impartially. The post-conviction court did not err in determining that Petitioner failed to prove deficient performance and prejudice from any alleged deficiency. The Petitioner is not entitled to relief on this basis.

## III

The Petitioner contends that he received the ineffective assistance of counsel because trial counsel "essentially coerced" the Petitioner not to testify. The State counters that the Petitioner failed to prove this claim. We agree with the State.

Relative to this issue, the post-conviction court found:

[The Petitioner] claims that his attorney "coerced him" to decide *not* to testify at trial, even though he contradicted himself by stating under oath at the post conviction hearing that he *did not* want to testify at his trial as well. . . . [T]he trial transcript indicates that the Court fully advised the petitioner concerning his right to testify at his trial and that the [Petitioner] stated under oath before the Court that he was choosing "not to testify," which was his "decision" to make. [The Petitioner] even signed and executed at the conclusion of the State's case in chief a written "Waiver of His Right to Testify" which the Court questioned him about in open Court. This Court finds that the [Petitioner] voluntarily and personally waived his right to testify and understood completely that it was his decision to make. The Court finds that the claim is without any merit. The [Petitioner] certainly was not "coerced" into choosing not to testify at trial.

. . . .

-8-

[Trial counsel] testified . . . that he did not prevent *or* coerce [the Petitioner] into choosing not to testify at trial.

The record reflects that trial counsel conferred with the Petitioner about the Petitioner's right to testify before and during the trial and that although the Petitioner initially did not want to testify, counsel advised the Petitioner to keep an open mind until the proof developed.   The Petitioner testified that although he communicated his desire to testify to counsel, counsel told him it would be better if the Petitioner did not testify.

We have reviewed the record of the trial proceedings, which reflects that the trial court advised the Petitioner of the Petitioner's right to present proof in his defense, including the right to testify or not to testify.  The court advised the Petitioner that the choice was the Petitioner's, not counsel's.  The court took a recess in order for counsel and the Petitioner to confer.  After the proceedings resumed, counsel announced that the Petitioner elected not to testify.  The court then examined the Petitioner under oath about his understanding of his waiver of the right to testify, and the Petitioner acknowledged that he had chosen not to testify and that the decision was his.  The post-conviction court rejected the Petitioner's testimony to the contrary and credited the countervailing proof.

The evidence does not preponderate against the post-conviction court's determination that the Petitioner was not coerced into making the decision not to testify. The Petitioner failed to show deficient performance and any prejudice from the alleged deficiency, and he is not entitled to relief on this basis.

In consideration of the foregoing and the record as a whole, the judgment of the post-conviction court is affirmed.

_____
ROBERT H. MONTGOMERY, JR., JUDGE